

# NUMBER 13-17-00078-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

DHM HOSPITALITY, LLC D/B/A ABV INN
OF CORPUS CHRISTI, HASMUKH PATEL,
AND DIPAK AMTHABHAI,                                    Appellants,

v.

VINOD SHAH, PRAVIN SURTI, AND
VIPOO HOSPITALITY, INC.,                                  Appellees.

On appeal from the 117th District Court
of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Justices Rodriguez, Contreras, and Benavides**
**Memorandum Opinion by Justice Rodriguez**

Appellants DHM Hospitality, LLC d/b/a ABV Inn of Corpus Christi, Hasmukh Patel,

and Dipak Amthabhai appeal the confirmation of an arbitration award in favor of appellees

Vinod Shah, Pravin Surti, and Vipoo Hospitality, Inc. By four issues, DHM complains that the arbitration award violated federal bankruptcy law, rendering it unenforceable, and that the award was rife with calculation errors that the trial court should have corrected. We affirm.

## I. BACKGROUND

This dispute arises from a transaction involving a hotel. Several individuals and entities participated in the transaction underlying this case, all of which were parties to the underlying arbitration. For ease of reference, the participants can be grouped into two camps—DHM and Vbros:

| DHM | Vbros |
|---|---|
| DHM Hospitality, LLC<br>Dipak Amthabhai<br>Hasmukh Patel<br>Manher Patel | Vbros Chateau, LLC<br>Vipoo Hospitality, Inc.<br>Vinod Shah<br>Pravin Surti<br>Kirit Patel |

DHM and Vbros disputed ownership of the hotel and damages related to the transaction. The arbitrator entered detailed findings from which we draw our recitation of the background facts.

Vbros bought the hotel in 2008. Vbros's owner, Vinod Shah, ran the hotel until a bankruptcy forced him to sell it to DHM in 2014. Their transaction entailed three agreements. The first was the "Purchase and Sale Agreement," whereby Vbros sold the hotel to DHM.

2

The second agreement was the "Option Agreement," which gave Vbros the right to re-acquire the hotel, at a price of $3,000,000, for fifteen months.[1]   It also gave Vbros the right to all income earned by the hotel during the option period "after key expenses are paid."   "Key expenses" included "property taxes, operating expenses, loan payments, and other standard expenses . . . ."   In exchange, Vbros agreed to provide an immediate deposit of $175,000 on the repurchase price and to pay DHM a set monthly payment.

The third was the oral "Management Agreement."   This gave Vbros the right to continue managing the hotel during the option period.

After a year, the parties' relationship soured.   DHM asked Vbros to leave the hotel in July of 2015, and Vbros complied.   On July 29, 2015, before the option period ended, Vbros gave a conditional notice that it was exercising its option to repurchase the hotel. On August 4, Vbros again gave notice, this time unconditionally.   However, Vbros did not tender the $3,000,000 to purchase the hotel.   DHM refused to sell the hotel to Vbros.

This litigation ensued as both sides asserted claims related to the agreements. DHM sued Vbros for conversion, arguing that Vbros had failed to deposit certain hotel revenues into a designated account.   Vbros sued DHM for, among other things, refusal to resell the hotel and failure to pay the hotel's net income to Vbros.

The case proceeded to arbitration.   Neither side requested a reporter to record the arbitration proceedings.   The arbitrator found that Vbros did not effectively exercise

---

[1] More precisely, the option could be exercised any time between twelve and fifteen months after the closing date of DHM's acquisition of the hotel.   DHM agreed not to sell the hotel prior to the expiration of the fifteen-month option period.

the option to repurchase the hotel, which therefore belonged to DHM, and that no damages were owed to Vbros for DHM's refusal to sell the hotel. The parties do not dispute this finding on appeal.

As to income, DHM argued that after deducting "key expenses" from the hotel's revenues, the hotel had suffered a net loss of $300,938. DHM asserted that it was therefore not required to pay any income to Vbros. Vbros disputed this figure, arguing that DHM had overreported its expenses. The arbitrator agreed and found that DHM had inflated its figures with $804,050 of improper expenses. Vbros also asserted that DHM had underreported its revenues in the amount of $252,035. The arbitrator again agreed. Correcting for these discrepancies, the arbitrator found that the hotel actually had net income of $755,146, which DHM should have paid to Vbros. After adjusting for other offsetting awards and attorney's fees, the arbitrator awarded Vbros $758,242.

Vbros filed a motion to confirm the award in the trial court. DHM objected and moved to modify the award, arguing that Vbros had misled the arbitrator concerning the hotel's revenues and expenses. In particular, DHM challenged the veracity of two exhibits concerning the hotel's finances.

The trial court denied DHM's motion to modify and confirmed the award. DHM appeals.

## II. STANDARD OF REVIEW AND GENERAL APPLICABLE LAW

Our review of a trial court's decision to confirm or vacate an arbitration award is de novo. *Jefferson Cty. Constables Ass'n v. Jefferson Cty.*, 512 S.W.3d 434, 441 (Tex. App.—Corpus Christi 2016), *aff'd*, 546 S.W.3d 661 (Tex. 2018). Texas law favors

4

arbitration, and thus review of arbitration awards is very narrow. *See Hoskins v. Hoskins*, 497 S.W.3d 490, 494 (Tex. 2016). An arbitration award is entitled to great deference in a court of law, and every reasonable presumption is indulged to uphold an arbitrator's decision. *Black v. Shor*, 443 S.W.3d 154, 161–62 (Tex. App.—Corpus Christi 2013, pet. denied). The review focuses on the integrity of the process, not the propriety of the result. *Jefferson Cty.*, 512 S.W.3d at 441.

### III. BANKRUPTCY FRAUD

By its first issue, DHM asserts that the arbitration award must be set aside because it stems from an illegal transaction—one that is stained by bankruptcy fraud. DHM argues that while Shah was in bankruptcy, he never disclosed the Option Agreement as an asset to the bankruptcy court, in violation of the bankruptcy code.

DHM contends that because the transaction was tainted by illegality, the arbitration award that stems from it must be set aside on grounds of public policy. As support, DHM cites the common law rule that "a claim arising out of an illegal transaction is not a legitimate subject of arbitration, and an award based thereon is void and unenforceable in courts of the country." *CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 237–38 (Tex. 2002) (assuming that these common law grounds for vacatur were still valid).

Several obstacles prevent us from granting DHM the relief it seeks. For one, recent caselaw has cast doubt on the continuing viability of common law grounds for vacatur, including the common law grounds concerning illegal transactions. *See Hoskins*, 497 S.W.3d at 494–95. In *Hoskins*, the court held that a party may avoid confirmation *only* by demonstrating a ground expressly listed in section 171.088 of the

5

Texas Arbitration Act ("TAA"). *Id.* at 495. The TAA "leaves no room for courts to expand on those grounds" for vacating an arbitration award. *Id.* at 494; *see Kreit v. Brewer & Pritchard, PC*, 530 S.W.3d 231, 237 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (citing *Hoskins* for the proposition that a party seeking to vacate an arbitration award may not invoke common law grounds for vacatur). A claim arising out of an illegal transaction is not listed among the grounds for vacatur stated in section 171.088. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.088(a) (West, Westlaw through 2017 1st C.S.).[2]

For another, even assuming this common law ground for vacatur remains viable, DHM's sole support for its bankruptcy fraud theory comes from outside the record. DHM has filed a motion asking this Court to take judicial notice of documents from Shah's bankruptcy proceeding. We decline to do so and deny DHM's motion. Except as necessary to determine jurisdiction, courts are prohibited from considering evidence outside the record. *Sabine Offshore Serv., Inc. v. City of Port Arthur*, 595 S.W.2d 840, 841 (Tex. 1979) (per curiam); *Bacon v. Tex. Historical Com'n*, 411 S.W.3d 161, 169 n.21 (Tex. App.—Austin 2013, no pet.); *see Gonzalez v. Villarreal*, 251 S.W.3d 763, 777 (Tex. App.—Corpus Christi 2008, pet. dism'd). Without reference to these outside matters, DHM's bankruptcy allegations find no support.

Lastly, DHM did not raise its bankruptcy fraud argument before the trial court. A party seeking to vacate an arbitration award must present any grounds for doing so to the trial court, otherwise, those complaints are waived on appeal. *See* TEX. R. APP. P.

---

[2] Even before *Hoskins*, this Court expressed doubt as to the continuing vitality of common law grounds for vacatur. *See In re Guardianship of Cantu de Villarreal*, 330 S.W.3d 11, 22 (Tex. App.—Corpus Christi 2010, no pet.).

6

33.1(a); *Black*, 443 S.W.3d at 163; *Ewing v. Act Catastrophe-Tex. LC*, 375 S.W.3d 545, 549 (Tex. App.—Houston [14th Dist.] 2012, pet. denied); *see also Dempsey v. U.S. Money Reserve, Inc.*, No. 13-15-00469-CV, 2017 WL 711603, at *6 (Tex. App.—Corpus Christi Feb. 23, 2017, no pet.) (mem. op.).

We overrule DHM's first issue.

## IV. MODIFICATION OF THE AWARD

By its second through fourth issues, DHM asserts that the arbitration award contains (1) "evident miscalculations" and (2) "gross mistakes." DHM protests that the arbitrator made miscalculations and mistakes when he relied on false evidence to reach his decision. DHM urges us to modify the award to correct these errors.

We first consider DHM's argument concerning "evident miscalculations." The TAA provides that, on application, the court shall modify or correct an award if the award contains an evident miscalculation of numbers. TEX. CIV. PRAC. & REM. CODE ANN. § 171.091(a) (West, Westlaw through 2017 1st C.S.); *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 90 n.23 (Tex. 2011). A court may not overturn an award based upon "evident miscalculation of numbers" unless the mistake is clear, concise, and conclusive from the record. *Roehrs v. FSI Holdings, Inc.*, 246 S.W.3d 796, 813 (Tex. App.—Dallas 2008, pet. denied); *Vernon E. Faulconer, Inc. v. HFI, LP*, 970 S.W.2d 36, 40 (Tex. App.—Tyler 1998, no pet.). "Miscalculation" implies inadvertence or an error caused by oversight. *Roehrs*, 246 S.W.3d at 813; *Vernon E. Faulconer*, 970 S.W.2d at 40. If the amount of the award is rationally inferable from the facts before the arbitrator, there is no evident miscalculation. *Vernon E. Faulconer*, 970 S.W.2d at 40; *Mega Builders, Inc. v.*

7

*Paramount Stores, Inc.*, No. 14-14-00744-CV, 2015 WL 3429060, at *3 (Tex. App.—Houston [14th Dist.] May 28, 2015, no pet.) (mem. op.).

Here, we have no means of knowing the full extent of the evidence that was before the arbitrator because no record was taken of the arbitration proceedings. It is well established that the non-prevailing party in an arbitration has the burden in the trial court of bringing forth a complete record and of establishing any basis which would warrant vacating or modifying the arbitrators' award. *Kline v. O'Quinn*, 874 S.W.2d 776, 790 (Tex. App.—Houston [14th Dist.] 1994, writ denied), *as supplemented on denial of reh'g* (May 12, 1994); *see O'Grady v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 506 S.W.3d 121, 125 (Tex. App.—Corpus Christi 2016, pet. denied) (mem. op.), *cert. denied*, 138 S. Ct. 722 (2018); *see also City of Weslaco v. Castillo*, No. 13-06-023-CV, 2007 WL 2811631, at *4 (Tex. App.—Corpus Christi Sept. 27, 2007, no pet.) (mem. op.). Absent such a record, we must presume that the record supports the arbitrator's determination of the proper amount of the award. *O'Grady*, 506 S.W.3d at 125.

DHM protests that the arbitrator made evident miscalculations when he double-counted certain expenses and miscomputed other figures. However, without a record, and unless the error appears on the face of the award, we must presume that there was no evident miscalculation. *See City of Baytown v. C.L. Winter, Inc.*, 886 S.W.2d 515, 520 (Tex. App.—Houston [1st Dist.] 1994, writ denied) ("We do not know what evidence the arbiters considered in making their award, and the award on its face does not reflect a miscalculation . . . ."); *Mega Builders*, 2015 WL 3429060, at *3 (presuming there was no miscalculation in double-counting expenses when there was no record of the

arbitration proceeding); *Rassouli v. Nat'l Signs Holding, LLC*, No. 14-15-00353-CV, 2017 WL 6374720, at *5 (Tex. App.—Houston [14th Dist.] Dec. 14, 2017, no pet.) (mem. op.) (similar).[3]  No error appears on the face of the award, and we have no means of knowing which findings are rationally inferable from the evidence and which are the work of "inadvertence or an error caused by oversight."  *See Vernon E. Faulconer*, 970 S.W.2d at 40.  We must therefore presume that the arbitrator's conclusions were not evident miscalculations.  *See Kline*, 874 S.W.2d at 790.

Lastly, DHM argues that the arbitration award contains "gross mistakes" that require a modification.  The common law empowered a trial court to modify an arbitration award if it found that the arbitrator "was guilty of . . . such gross mistake as would imply bad faith or failure to exercise an honest judgment."  *Nuno v. Pulido*, 946 S.W.2d 448, 452 (Tex. App.—Corpus Christi 1997, no writ).[4]  But, as above, the lack of an arbitration record prevents us from evaluating for gross mistake.  *See Statewide Remodeling, Inc. v. Williams*, 244 S.W.3d 564, 569–70 (Tex. App.—Dallas 2008, no pet.) (holding that without an arbitration record, the court presumes there was no gross mistake); *Anzilotti v. Gene D. Liggin, Inc.*, 899 S.W.2d 264, 267 (Tex. App.—Houston [14th Dist.] 1995, no writ) (same).  In the absence of such a record, we cannot conclude that the trial court erred in confirming the arbitration award without modification.  *See id.*

---

[3] *Cf. McGrath v. FSI Holdings, Inc.*, 246 S.W.3d 796, 813 (Tex. App.—Dallas 2008, pet. denied) (elaborating on rules concerning miscalculation apparent on the face of the award).

[4] The TAA does not list gross mistake among the possible grounds for modifying an arbitration award, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 171.091(a) (West, Westlaw through 2017 1st C.S.), and, like common law grounds for vacatur, the era of common law grounds for modification may be drawing to a close.  *See Hoskins v. Hoskins*, 497 S.W.3d 490, 495 (Tex. 2016).  But because no party has argued otherwise, we will assume that gross mistake remains a valid basis for modification.

We overrule DHM's second, third, and fourth issues.

## V. CONCLUSION

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the 29th
day of November, 2018.